## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

DEANDRE CHARLES,

     Plaintiff,

vs.

DETECTIVE MICHAEL BRAJDIC,
Individually,

MIAMI-DADE POLICE DEPARTMENT,

MIAMI-DADE COUNTY,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, DEANDRE CHARLES, sues the Defendants, DETECTIVE MICHAEL BRAJDIC, MIAMI-DADE POLICE DEPARTMENT, and MIAMI-DADE COUNTY, and states:

1.    This is a Civil Rights action on behalf of Plaintiff, DEANDRE CHARLES, whose rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated when Defendant, DETECTIVE MICHAEL BRAJDIC caused the false arrest, false imprisonment, and malicious prosecution of Plaintiff, causing Plaintiff to suffer physical inconvenience and discomfort, loss of time, loss of the enjoyment of

childhood life, expenses incurred due to incarceration, mental suffering, embarrassment, humiliation, deprivation of liberty, disgrace, injury to Plaintiff's feelings, and loss of reputation.

2.  This is an action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, against Defendants, DETECTIVE MICHAEL BRAJDIC, MIAMI-DADE POLICE DEPARTMENT, and MIAMI-DADE COUNTY, who subjected Plaintiff to false arrest, false imprisonment, malicious prosecution, and violated his Fourth and Fourteenth Amendment Rights.

3.  Plaintiff, DEANDRE CHARLES, avers that Defendant, DETECTIVE MICHAEL BRAJDIC, caused an unreasonable seizure of Plaintiff and violated the Plaintiff's Due Process rights by conducting a grossly negligent or deliberately indifferent investigation leading to the false arrest, false imprisonment, and malicious prosecution of Plaintiff without possessing even arguable probable cause.

### JURISDICTION AND VENUE

4.  This action arises under the Constitution and laws of the United States, particularly 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

5.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1983 and 1343.

6.  Venue is proper in the Southern District of Florida as it is where all of the acts and omissions giving rise to this action occurred.

7.  The acts and omissions giving rise to this action occurred within the applicable statute of limitations, and this Honorable Court has Jurisdiction.

8.      Plaintiff, DEANDRE CHARLES, timely satisfied the notice of claim requirement pursuant to Florida Statute § 768.28 regarding supplemental state tort claims against the Defendants, and has provided the Defendants the required amount of time to resolve the claim. The Plaintiff's claim remains unresolved. There is no administrative requirement regarding Plaintiff's Civil Rights claims under 42 U.S.C. § 1983.

## PARTIES

9.      At all times material to the acts and omissions giving rise to this action, the Plaintiff, DEANDRE CHARLES, was a minor, male, who resided in Miami-Dade County in the State of Florida with his mother. The Plaintiff is presently an adult male who resides in Miami-Dade County in the State of Florida, and is otherwise *sui juris.*

10.     At all times material to this action, the Defendant, MIAMI-DADE COUNTY, was and is a political subdivision of the State of Florida, duly existing by virtue of the laws of the State of Florida, with the power and authority to carry out municipal functions, including the operation of a police department known as the Miami-Dade Police Department, and with the power and authority to hire, fire, train, and supervise police officers employed by the Miami-Dade Police Department.

11.     At all times material to this action, the Defendant, MIAMI-DADE POLICE DEPARTMENT was and is the single Miami-Dade County agency responsible for the administration and enforcement of state, local, and federal laws, in Miami-Dade County. At all times material to this action, Juan Perez served as the Director of the Miami-Dade Police Department.

12.     At all times material to this action, the Defendant, MIAMI-DADE COUNTY, hired,

trained, employed, supervised, and controlled police officers employed by the Miami-Dade Police Department, including, but not limited to Defendant, DETECTIVE MICHAEL BRAJDIC.

13. At all times material to this action Defendant, DETECTIVE MICHAEL BRAJDIC, was duly appointed and acting as a homicide detective for the Miami-Dade Police Department, acting under color of law, to wit: under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Florida, Miami-Dade County, and/or the Miami-Dade Police Department. Defendant, DETECTIVE MICHAEL BRAJDIC, is sued in his individual capacity.

14. Each and all of the acts of the Defendant, DETECTIVE MICHAEL BRAJDIC, and other members of the Miami-Dade Police Department, material to this action, were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs, and usages of the United States of America, the State of Florida, Miami-Dade County, and the Miami-Dade Police Department, under the color of law and by virtue of the authority as law enforcement officers for the Miami-Dade Police Department.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

15. On August 9, 2014, Joseph Raksin, a beloved Rabbi visiting from New York, was shot and murdered in an apparent armed robbery or attempted armed robbery.

16. On August 9, 2014, the Plaintiff, DEANDRE CHARLES, was fourteen (14) years old.

17. The investigation into the murder of Rabbi Joseph Raksin remained open with no arrests for a total of sixteen (16) months. As time passed and the tragic murder

remained unsolved, the crime continued to garner an increasing amount of local and national attention. The Defendant MIAMI-DADE COUNTY, through elected and appointed officers and officials, engaged in deliberate conduct to keep the public updated on the investigation, such as providing repeated updates to the media regarding the unsolved murder.

18. The publicly expressed desire of elected and appointed officers, agents, and elected officials of Defendant, MIAMI-DADE COUNTY, to make an arrest in the unsolved murder created a working environment that became the moving force behind the grossly negligent or deliberately indifferent investigation conducted by Defendant, DETECTIVE MICHAEL BRAJDIC, causing the false arrest, false imprisonment, and malicious prosecution of the Plaintiff, and violating the Plaintiff's Fourth and Fourteenth Amendment rights.

19. The Defendant, DETECTIVE MICHAEL BRAJDIC, failed to conduct an objectively reasonable investigation and he turned a blind eye, due to either gross negligence or deliberate indifference, to exculpatory information that was readily available to him, at all times material to this action.

20. On or about December 8, 2015, sixteen (16) months after the murder of Rabbi Joseph Raksin, Defendant, DETECTIVE MICHAEL BRAJDIC, concluded his grossly negligent or deliberately indifferent investigation with the determination that the Plaintiff, DEANDRE CHARLES, murdered Joseph Raksin and he testified to such in front of a Miami-Dade County Grand Jury, causing a True Bill to be returned with the Plaintiff's Indictment for First Degree Murder.

21. The Plaintiff, DEANDRE CHARLES, was arrested and charged with First Degree

Murder the next day, December 9, 2015. The Plaintiff was fifteen (15) years old at the time of his arrest.

22. Defendant, MIAMI-DADE COUNTY, was so hell-bent on closing the murder investigation with an arrest they participated in a press conference to announce the arrest of Plaintiff for the murder of Rabbi Joseph Raksin, which also occurred on December 9, 2015.

23. High-ranking officials from both Defendant MIAMI-DADE COUNTY and the MIAMI-DADE POLICE DEPARTMENT were present on stage at the press conference when the announcement of the arrest of the Plaintiff was made. The press conference was disseminated locally and nationally and the Plaintiff was identified as the suspect who murdered Rabbi Joseph Raksin. A poster-sized photograph of the Plaintiff, then fifteen years old, was placed in front of the rolling cameras and photographers, akin the old "perp walks" conducted in years past, while the arrest of the Plaintiff was announced.

24. At the press conference announcing the Plaintiff's arrest, the poster-sized photo of the Plaintiff was shown alongside a poster-sized sketch of a face drawn by an eyewitness to depict the person the witness observed fleeing from the area of the murder. The sketch was so poorly drawn it resembled a cartoon character far more than the Plaintiff, and it quickly went viral and was referred to as the, 'Worst witness sketch in history.' The sketch and its connection to the arrest of the Plaintiff for murder became so widely disseminated and ridiculed it became the object of jokes of internationally renowned comedian Kevin Hart, causing further attention and humiliation to the Plaintiff.

25.     The Plaintiff, DEANDRE CHARLES, remained in custody in a Miami-Dade County jail from December 9, 2015 through November 11, 2016 and remained on house arrest at his mother's home thereafter until the State of Florida dropped all charges against the Plaintiff on January 18, 2017.

26.     Exculpatory information indicating that individuals other than the Plaintiff were involved in the murder of Rabbi Joseph Raksin was in the possession and/or control of Defendant, DETECTIVE MICHAEL BRAJDIC, for months and, in some instances, over a year prior to his grossly negligent or deliberately indifferent investigation causing the Plaintiff's arrest.

27.     The exculpatory information possessed by Defendant, DETECTIVE MICHAEL BRAJDIC, supported an objective, reasonable conclusion that four suspects, none of whom are the Plaintiff, were involved in the murder of Rabbi Joseph Raksin, and the information further supported that the Plaintiff had nothing to do with the murder.

28.     The exculpatory information in the possession and/or control of Defendant, DETECTIVE MICHAEL BRAJDIC was ignored or overlooked by Defendant, DETECTIVE MICHAEL BRAJDIC, who, due to either gross negligence or deliberate indifference, failed to review, discover, and/or investigate the information and, as a result, the Defendant, DETETIVE MICHAEL BRAJDIC'S grossly negligent or deliberately indifferent investigation caused the false arrest, false imprisonment, and malicious prosecution of the Plaintiff, and the violation of the Plaintiff's Fourth and Fourteenth Amendment rights.

29.     Despite overwhelming evidence that four suspects, none of whom were the Plaintiff, had been involved in the attempted robbery and murder of Rabbi Joseph Raksin, the

Defendant, DETECTIVE MICHAEL BRAJDIC through his grossly negligent or deliberately indifferent investigation, arrived at the conclusion that the Plaintiff committed the murder.

30. The exculpatory evidence supporting the conclusion that four men other than the Plaintiff were involved in the murder of Rabbi Joseph Raksin, disregarded by the Defendant, DETECTIVE MICHAEL BRAJDIC due to his grossly negligent or deliberately indifferent homicide investigation includes the information detailed in Paragraphs 31 through 48 below.

31. On August 10, 2014, Officer Douglas McCoy of the Miami-Dade Police Department notified the Defendant, DETECTIVE MICHAEL BRAJDIC, that a confidential informant named three men who were involved in the homicide of Rabbi Joseph Raksin. The initials of the men named by the confidential informant are K.C., M.K. and D.P.[1] The confidential informant also identified a black Cadillac Escalade as being involved in the murder. The confidential informant did not mention the Plaintiff.

32. On August 11, 2014, Crime Stopper Tips received by the Miami-Dade Police Department provided the names of two suspects that the caller stated were involved in the murder of Rabbi Joseph Raksin, K.C. and D.P. Both of the names provided in the Crime Stopper Tips, K.C. and D.P., matched the names provided by the confidential informant one day earlier. The Plaintiff was not mentioned in the Crime Stopper Tips.

33. On August 15, 2014, K.C. and D.P., who were older than the Plaintiff and

---

[1] At the time of the drafting of this complaint, the investigation into the murder of Rabbi Joseph Raksin remains open. In an effort to avoid impeding the investigation in any way, initials are used in lieu of naming the men.

acquaintances of the Plaintiff's older brother, arrived at the Plaintiff's home driving a black Cadillac Escalade and asked for the Plaintiff's brother. When the Plaintiff indicated that his brother was not home, the men asked the Plaintiff if he would like to go for a ride in their black Cadillac Escalade. The Plaintiff, fifteen years old at the time and wowed by the luxury vehicle, agreed to go for a ride with K.C. and D.P. in their new black Cadillac Escalade.

34.  Shortly after getting into black Cadillac Escalade with K.C. and D.P., the vehicle was stopped by law enforcement and the three occupants of the vehicle, K.C., D.P., and the Plaintiff were detained for police questioning.

35.  Two of the occupants in the black Cadillac Escalade, K.C. and D.P., were two of the three individuals named by the confidential informant and in the Crime Stoppers Tips as being involved in the murder of the Rabbi. K.C. and D.P. gave statements to the police on August 15, 2014 after being detained for questioning by the police.

36.  The statements given by K.C. and D.P. on August 15, 2014 provided invaluable evidence in the form of information and inconsistencies, as the statements of the two men were inconsistent with each other on crucial issues such as where they were on the date of the murder, what they were doing on the date of the murder, who else they were with on the day of the murder, and whether or not they were with each other on the day of the murder.

37.  Neither K.C. nor D.P. stated that they were with the Plaintiff on the date of the Rabbi's murder.

38.  In K.C.'s statement to officers on August 15, 2014, he said he was released from custody for a probation violation on August 6, 2014, and was essentially homeless.

He further stated that on the evening of August 8, 2014 he slept in a car in front of M.K.'s house, and that on August 9, 2014 at approximately 8:00 am he awoke and drove with M.K. to D.P's residence. K.C. stated that he, D.P., and M.K. then drove to another location where they saw a man named J.S. K.C. admitted to knowing J.S. and stated that J.S. was heavily involved in robberies and burglaries.

39.    In K.C.'s statement to police, he places himself with M.K., D.P., and J.S. on the date of the Rabbi's murder, and he acknowledges being near the black Cadillac Escalade on that date as well. K.C. also places himself with M.K. the night before the murder of the Rabbi.

40.    In D.P.'s statement to officers on August 15, 2014 D.P. advised that K.C. was recently released from jail for a probation violation and is a known burglar and robber. D.P. stated he believes that K.C. still commits burglaries and robberies. D.P. stated that on the morning of August 9, 2014 he was located at his residence throughout the morning and afternoon time and did not leave his residence. D.P. denied being with K.C. on August 9, 2014.

41.    On April 14, 2015, a man in police custody for an unrelated charge, J.S., provided a statement to police wherein he placed himself on the scene of the murder of Rabbi Joseph Raksin, and he named the three other men he was with, K.C., M.K., and D.P.

42.    The three men that J.S. identified and described as being involved in the murder of Rabbi Joseph Raksin were the same three men named by the confidential informant and two of the same men named in the Crime Stoppers Tips. J.S. did not mention the Plaintiff as having any involvement in the attempted robbery and murder.

43.    The statement of J.S., like the statement of K.C. puts all four men, K.C., M.K., D.P.,

and J.S. together at one point on the day of the murder of the Rabbi.

44.     J.S. not only named K.C., M.K., and D.P. as the other men involved in the attempted robbery and murder of Rabbi Joseph Raksin, he also provided officers with the motive. J.S. explained that he, K.C., M.K., and D.P. were burglars and tried to break into homes together. J.S. further explained that on the morning of the Rabbi's murder, the four men were together and had been unsuccessful in limited burglary attempts prior to them arriving in the area where the Rabbi was murdered. J.S. then provided details consistent with the men's involvement in the attempted robbery and murder of Rabbi Joseph Raksin. The Plaintiff was not mentioned.

45.     In addition to stating that he was with K.C., M.K., and D.P. on the date of the Rabbi's murder, J.S. also provided descriptions of the clothing worn by K.C. and D.P. on that date. J.S.'s description of the clothing worn by K.C. and D.P on the date of the Rabbi's murder closely resembled eyewitness descriptions of the clothing worn by the two suspects seen fleeing from the scene of the Rabbi's murder, as provided by multiple residents of the area where the murder occurred on August 9, 2014.

46.     On October 1, 2015, a firearms analyst from the Miami-Dade County Crime Lab reported on the discovery of a connection between a casing recovered from the scene of the Rabbi's murder and a casing recovered from an armed robbery that took place the day before the murder on August 8, 2014 a few miles from the scene of the Rabbi's murder.

47.     K.C. was a suspect in the armed robbery committed on August 8, 2014. No eyewitnesses or physical evidence connected the Plaintiff to the armed robbery committed on August 8, 2014. There was no explanation as to how the Plaintiff could

have possibly obtained possession of the firearm following the armed robbery on August 8, 2014 for its use in the murder of Rabbi Joseph Raksin one day later on August 9, 2014.

48.    Although there is an age gap between the Plaintiff and K.C., the two closely resembled each other, causing the possibility of a misidentification to be high.

49.    Any reasonable officer in Defendant, DETECTIVE MICHAEL BRAJDIC'S position, with knowledge of the information he possessed that he believed supported his suspicion of the Plaintiff's involvement in the murder Rabbi Joseph Raksin, who also possessed the information contained in Paragraphs 31 through 48 above, would have known that further investigation was warranted prior to instituting any criminal proceedings.

50.    Defendant, DETECTIVE MICHAEL BRAJDIC, disregarded the information that he possessed that supported the reasonable conclusion that K.C., M.K., D.P., and J.S. were responsible for the murder of the Rabbi, due to gross negligence or deliberate indifference, and caused the false arrest of Plaintiff based upon a clear misidentification, misinformation related to the reporting of D.N.A. testing results, and worthless cell cite evidence.

51.    Following the Plaintiff's arrest on December 8, 2015, the Plaintiff spent approximately 338 days unlawfully incarcerated until he was finally released on November 11, 2016. The Plaintiff then spent an additional 69 days on house arrest until the State of Florida dropped charges against him on January 18, 2017.

52.    Immediately following his arrest, the Plaintiff, DEANDRE CHARLES, protested his innocence. At a hearing on the Plaintiff's motion for a bond shortly after his arrest,

the Plaintiff, through his counsel, began to assert his innocence and identify the suspects who were responsible for the murder of Rabbi Joseph Raksin.

53.    The Plaintiff continued to protest his innocence until the eve of a jury trial on his murder case scheduled for November 2016, when attorneys for Mr. Charles filed detailed pre-trial motions seeking permission from the trial court to introduce evidence that the four suspects named above, K.C., M.K., D.P., and J.S. were responsible for the murder of Rabbi Joseph Raksin.

54.    In the midst of the pretrial motions, the scheduled jury trial was continued and the State of Florida agreed to allow the Plaintiff, DEANDRE CHARLES to be released from jail to the custody of his mother on house arrest on November 11, 2016, where he remained until January 18, 2017, when the State of Florida dropped all charges against the Plaintiff.

55.    The actions of Defendant, DETECTIVE MICHAEL BRAJDIC, caused the false arrest, false imprisonment, and malicious prosecution of the Plaintiff and violated clearly established and well-settled federal Constitutional rights of Plaintiff, which a reasonable and prudent officer would have known.

56.    As a direct and proximate consequence of the actions of Defendants, the Plaintiff, DEANDRE CHARLES, suffered the following injuries and damages:

    a.  Violation of his Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution;

    b.  Violation of his rights under the laws of the State of Florida; and,

    c.  Physical inconvenience and discomfort, loss of time, loss of the enjoyment of childhood life, expenses incurred due to incarceration, mental anguish, mental

suffering, embarrassment, humiliation, deprivation of liberty, disgrace, injury to Plaintiff's feelings, and loss of reputation.

## COUNT I

### 42 U.S.C. § 1983 – DEFENDANT DETECTIVE MICHAEL BRAJDIC

57.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

58.   The Defendant, DETECTIVE MICHAEL BRAJDIC, caused a seizure of the Plaintiff through the intentional arrest and confinement of the Plaintiff.

59.   A reasonable prudent officer in the circumstances and possessing the same knowledge and information as Defendant, DETECTIVE MICHAEL BRAJDIC, would not have believed that probable cause existed to initiate criminal proceedings to cause the arrest of the Plaintiff for the murder of Rabbi Joseph Raksin.

60.   The Plaintiff's arrest and continued detention on the basis of a misidentification resulting from the gross negligence or deliberate indifference of the Defendant, DETECTIVE MICHAEL BRAJDIC, violated the Plaintiff's right to be free from unreasonable seizures protected by 42 U.S.C. § 1983 and the Fourth Amendment.

61.   The Plaintiff's arrest and continued detention on the basis of misidentification resulting from the gross negligence or deliberate indifference of the Defendant, DETECTIVE MICHAEL BRAJDIC, violated the Plaintiff's Due Process rights protected by 42 U.S.C. § 1983 and the Fourteenth Amendment.

62.   The continued incarceration of the Plaintiff in the face of repeated protests by the Plaintiff after it was or should have been known that the Plaintiff was not involved in the murder of Rabbi Joseph Raksin, and thereby entitled to release, deprived the

Plaintiff of liberty protected by the United States Constitution.

63.     The unlawful seizure caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

64.     In the alternative, the violation of the Plaintiff's Due Process rights caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT II

### 42 U.S.C. § 1983 – DEFENDANT MIAMI-DADE COUNTY

65.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

66.     The Defendant, MIAMI-DADE COUNTY, by and through the Mayor, Commissioners and/or other officials of Miami-Dade County, was so determined to conclude the open investigation into the murder of Rabbi Joseph Raksin, a case that had gained local and national media attention, the Defendant, MIAMI-DADE COUNTY, created a working environment of deliberate indifference to the Due Process rights of the Plaintiff that caused the Defendant, DETECTIVE MICHAEL BRAJDIC'S investigation to become grossly negligent or deliberately indifferent to the truth as well as the Constitutional Due Process Rights of the Plaintiff, to simply make an arrest.

67.     The Plaintiff's arrest and continued detention on the basis of a misidentification resulting from the gross negligence or deliberate indifference of the Defendant,

DETECTIVE MICHAEL BRAJDIC, caused by the work environment created by the Defendant, MIAMI-DADE COUNTY, violated the Plaintiff's right to be free from unreasonable seizures protected by 42 U.S.C. § 1983 and the Fourth Amendment.

68.     The Plaintiff's arrest and continued detention on the basis of misidentification resulting from the gross negligence or deliberate indifference of the Defendant, DETECTIVE MICHAEL BRAJDIC, caused by the work environment created by the Defendant, MIAMI-DADE COUNTY, violated the Plaintiff's Due Process rights protected by 42 U.S.C. § 1983 and the Fourteenth Amendment.

69.     The Defendant, MIAMI-DADE COUNTY, participated in a press conference on December 9, 2015 at which time the arrest of the Plaintiff was announced and a large poster-sized image of the Plaintiff was obtained and placed on stage throughout the press conference for the television cameras and print media photographers to capture and broadcast the Plaintiff in a humiliating situation. This conduct violated the Plaintiff's Fourth Amendment privacy rights.

70.     The unlawful seizure caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

71.     In the alternative, the violation of the Plaintiff's Fourteenth Amendment Due Process rights caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

72.     In the alternative, the violation of the Plaintiff's Fourth Amendment privacy rights caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the

enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT III

### 42 U.S.C. § 1983 – DEFENDANT MIAMI-DADE POLICE DEPARTMENT

73.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

74.     The Defendant, MIAMI-DADE POLICE DEPARTMENT'S training programs, policies, and customs involving the sharing of information between police officers and units within the Miami-Dade Police Department were so inadequate as to amount to the deliberate indifference to the Due Process rights of the Plaintiff.

75.     The Defendant, MIAMI-DADE POLICE DEPARTMENT'S inadequate training programs, policies, and customs related to the sharing of information between police officers created a working environment of deliberate indifference to the Due Process rights of the Plaintiff, that caused the Defendant, DETECTIVE MICHAEL BRAJDIC'S investigation to become grossly negligent or deliberately indifferent to the truth as well as the Fourteenth Amendment Due Process rights of the Plaintiff, to simply make an arrest.

76.     The Defendant, MIAMI-DADE POLICE DEPARTMENT, participated in a press conference on December 9, 2015 at which time the arrest of the Plaintiff was announced and a large poster-sized image of the Plaintiff was obtained and placed on stage throughout the press conference for the television cameras and print media photographers to capture and broadcast the Plaintiff in a humiliating situation. This conduct violated the Plaintiff's Fourth Amendment privacy rights.

77.    The violation of the Plaintiff's Fourteenth Amendment Due Process rights caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

78.    In the alternative, the violation of the Plaintiff's Fourth Amendment privacy rights caused the Plaintiff to suffer loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## STATE LAW TORTS

## COUNT IV

### FALSE ARREST- DEFENDANT DETECTIVE MICHAEL BRAJDIC

79.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

80.    At all times relevant herein, Defendant, DETECTIVE MICHAEL BRAJDIC acted with the intention of confining the Plaintiff within the fixed boundaries of a Miami-Dade County jail cell. The acts directly or indirectly resulted in the Plaintiff's unlawful confinement and deprivation of liberty.

81.    The Plaintiff was aware of his confinement and was being held against in will.

82.    The Defendant, DETECTIVE MICHAEL BRAJDIC, acted in bad faith and with malicious purpose as shown by his grossly negligent or deliberately indifferent investigation.

83.    The Defendant, DETECTIVE MICHAEL BRAJDIC'S actions were unreasonable and unwarranted under the circumstances.

84.     As a direct and proximate result of the acts, omissions, and conduct of the Defendant, DETECTIVE MICHAEL BRAJDIC, the Plaintiff suffered loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT V

## FALSE IMPRISONMENT- DEFENDANT DETECTIVE MICHAEL BRAJDIC

85.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

86.     At all times relevant herein, Defendant, DETECTIVE MICHAEL BRAJDIC acted with the intention of confining the Plaintiff within the fixed boundaries of a Miami-Dade County jail cell. The acts directly or indirectly resulted in the Plaintiff's unlawful confinement and deprivation of liberty.

87.     The Plaintiff was aware of his confinement and was being held against in will.

88.     The Defendant, DETECTIVE MICHAEL BRAJDIC, acted in bad faith and with malicious purpose as shown by his grossly negligent or deliberately indifferent investigation.

89.     The Defendant, DETECTIVE MICHAEL BRAJDIC'S actions were unreasonable and unwarranted under the circumstances.

90.     The Plaintiff protested his innocence immediately upon being arrested and continued to protest his innocence and point to sources of information that proved his innocence.

91.     The information pointed to by the Plaintiff to support his innocence was readily obtainable by the Defendant, DETECTIVE MICHAEL BRAJDIC.

92.  The Defendant, DETECTIVE MICHAEL BRAJDIC'S actions directly or indirectly caused the continued detention of the Plaintiff in the face of repeated protests by the Plaintiff, after it was or should have been known that the Plaintiff was not responsible for the murder of Rabbi Joseph Raksin and thereby entitled to release, depriving the Plaintiff of liberty protected by the Constitution.

93.  As a direct and proximate result of the acts, omissions, and conduct of the Defendant, DETECTIVE MICHAEL BRAJDIC, the Plaintiff suffered loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## COUNT VI

## MALICIOUS PROSECUTION - DEFENDANT DETECTIVE MICHAEL BRAJDIC

94.  Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-56 above, and further alleges:

95.  At all times relevant herein, the acts and omissions of Defendant, DETECTIVE MICHAEL BRAJDIC directly or indirectly caused the commencement of the original judicial proceedings against the Plaintiff.

96.  Defendant, DETECTIVE MICHAEL BRAJDIC directly or indirectly caused the arrest and prosecution of the Plaintiff for the murder of Rabbi Joseph Raksin.

97.  There was an absence of probable cause for the Plaintiff's arrest and prosecution of the Plaintiff, and the Plaintiff was prosecuted solely due to the grossly negligent or deliberately indifferent investigation conducted by the Defendant, DETECTIVE MICHAEL BRAJDIC.

98.   The Defendant, DETECTIVE MICHAEL BRAJDIC, acted in bad faith and with malicious purpose as shown by his grossly negligent or deliberately indifferent investigation.

99.   The dismissal of the all charges against the Plaintiff on January 18, 2017 constituted a bona fide termination of the proceedings in favor of the present Plaintiff.

100.  As a direct and proximate result of the acts, omissions, and conduct of the Defendant, DETECTIVE MICHAEL BRAJDIC, the Plaintiff suffered loss of liberty, mental anguish, loss of capacity for the enjoyment of life, humiliation, embarrassment, shame, fright, disgrace, injury to his feelings, and loss of reputation.

## **PUNITIVE DAMAGES**

101.  To the extent that the actions and omissions of Defendant, DETECTIVE MICHAEL BRAJDIC, complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly, and in such manner as to entitle the Plaintiff to a substantial award of Punitive Damages, such damages are sought for the Counts alleged above in this Complaint.

## **DAMAGES**

WHEREFORE, the Plaintiff demands that, after due proceedings, judgment for damages be entered in favor of the Plaintiff and against Defendants, and that this Court:

a.  Award Plaintiff all compensatory damages reasonable under the circumstances, including mental anguish and emotional distress, loss of enjoyment of life, and any other compensatory damages, for each Count alleged in the Complaint;

b. Award Plaintiff Punitive Damages against Defendant, DETECIVE MICHAEL BRAJDIC, who is sued in his individual capacity;

c. Award Plaintiff reasonable attorney's fees and court costs as allowed by law;

d. Award Plaintiff legal interest on all damages awarded; and,

e. Award Plaintiff such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 17th day of January, 2019.

> **DEMILES LAW**
> *Counsel for the Plaintiff*
> 3440 Hollywood Blvd, Suite 415
> Hollywood, FL 33021
> Telephone:    954.241.4246
> Facsimile:    954.241.4299
> Email: james@demileslaw.com
>
> By:
> James DeMiles, Esq.
> Florida Bar No.:  15974



**DEMILES LAW**

May 23, 2018

Miami-Dade Police Department, through its
Director Juan J. Perez
9105 Northwest 25th Street
Doral, Florida 33172-1500
Via Certified U.S. Mail
Return Receipt No.:

Detective Michael Brajdic
Miami-Dade Police Department
9105 Northwest 25th Street
Doral, Florida 33172-1500
Via Certified U.S. Mail
Return Receipt No.:

Miami-Dade County, through its Mayor
The Honorable Carlos J Gimenez
111 N.W. 1st Street, 29th Floor
Miami, Florida 33128
Via Certified U.S. Mail
Return Receipt No.:

Miami-Dade County, through its Board of County Commissioners
111 NW 1st Street, Suite 220
Miami, Florida 33128
Via Certified U.S. Mail
Return Receipt No.:

Florida Department of Financial Services, through
Chief Financial Officer,
Honorable Jeff Atwater
200 East Gaines Street
Tallahassee, Florida 32399
Via Certified U.S. Mail
Return Receipt No.:

<u>**NOTICE OF CLAIM PURSUANT TO SECTION 768.28, FLORIDA STATUTES**</u>

**Re:** **The False Arrest and False Imprisonment of De'Andre Charles (December 9, 2015); The Violation of The Civil Rights of De'Andre Charles (42 U.S.C. § 1983); The Illegal Arrest and Continued**

3440 Hollywood Blvd. Suite 415
Hollywood, FL 33021
954.241.4246
WWW.DEMILESLAW.COM

**Detention of De'Andre Charles from December 9, 2015 Through November 11, 2016; Gross Negligence in The Investigation, Indictment, and Prosecution of De'Andre Charles; and, The Malicious Prosecution of De'Andre Charles;**

**Claimant: De'Andre Edwin Charles**
**Date of Birth: 06/22/2000**
**Place of Birth: Miami, Florida**
**Social Security Number: 594939181**
**Date of Incident: December 9, 2015**

**To: The Mayor of Miami-Dade County and the Miami-Dade County Board of County Commissioners, Miami-Dade Police Department Director Juan J. Perez, Detective Michael Brajdic of the Miami-Dade Police Department, and Florida Department of Financial Services:**

Please take notice that pursuant to Florida Statute § 786.28(6) we are informing you that we been retained to represent De'Andre Charles for damages suffered as a result of violations of his civil rights, false arrest, false imprisonment, illegal arrest and detention, gross negligence, and malicious prosecution including, but not limited to loss of time, loss in quality of life, expenses incurred due to the imprisonment, inconvenience, discomfort, loss of educational opportunities, mental anguish, mental suffering, humiliation, shame, destruction of reputation, and fright.

There are no prior adjudicated unpaid claims or other judgments in excess of $200 owed by the claimant to the state, its agency, officer or subdivision.

On behalf of De'Andre Charles, we hereby make a claim for all damages, economic and non-economic, suffered as a result of false arrest, false imprisonment, illegal arrest and detention, gross negligence, malicious prosecution, and violations of his civil rights guaranteed by the Fourth Amendment and Fourteenth Amendment to the United States' Constitution and 42 U.S.C. § 1983.

This letter is intended to satisfy the conditions precedent to filing a suit under § 768.28, Florida Statutes. If a settlement is not reached within the six month statutory time period, we will proceed with civil litigation without any further notice. If you or your attorneys do not feel this notice meets the statutory criteria or is deficient for some reason, please notify our offices immediately.

## Law

"Where it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information

2

is readily obtainable, or where the accused points out the sources of the information". Rankin v. Evans, 133 F.3d 1425, 1435-1436 (11th Cir.1998).

Detention on the basis of misidentification resulting from gross negligence or deliberate indifference presents a § 1983 claim for false imprisonment causing Due Process violations. Cannon v. Macon County, 1 F.3d 1558 (11th Cir. 1993); Taylor v. Ledbetter, 818 F.2d 791 (11th Cir. 1987), cert. denied, 489 U.S. 1065 (1989).

Continued detention in the face of repeated protests after it was or should have been known that the detainee was entitled to release will deprive the accused of liberty protected by the Constitution. Cannon v. Macon County, 1 F.3d 1558 (11th Cir. 1993); Sevard v. Pulaski County, 959 F.2d 662 (7th Cir. 1992); Saunders v. English, 950 F.2d 1152 (5th Cir. 1992).

Officers failing to conduct an objectively reasonable investigation, and objectively, not turning a blind eye to exculpatory information that is available to the officers, liability for false imprisonment and malicious prosecution may attach. Kingsland v. City of Miami, 382 F.3d 1220, 1228 (11th Cir. 2004); Sevigny v. Dicksey, 846 F.2d 953 (4th Cir. 1988); BeVier v. Hurcal, 806 F.2d 123,128 (7th Cir. 1986).

## Argument

De'Andre Charles was born on June 22, 2000. On August 9, 2014, De'Andre Charles was 14 years old. On August 9, 2014, Joseph Raksin, a beloved Rabbi visiting from New York, was brutally murdered in an apparent attempted armed robbery. On Tuesday December 8, 2015, sixteen (16) months after the murder of Joseph Raksin, Detective Michael Brajdic of the Miami-Dade Police Department testified before a Miami-Dade County Grand Jury that De'Andre Charles murdered Joseph Raksin, at which time a True Bill was returned, and De'Andre Charles was indicted for First Degree Murder. De'Andre Charles was arrested on the charge of First Degree Murder on December 9, 2015, and he remained detained in custody until November 11, 2016. All charges against Mr. Charles were later dismissed on January 18, 2017.

The information relied upon by the Office of the State Attorney at the time the State of Florida dropped the charges against De'Andre Charles on January 17, 2017 was readily obtainable and, in fact, had been in the possession of the lead detective, Michael Brajdic, for weeks, months, and with respect to some of the exculpatory evidence, over a year prior to De'Andre Charles' arrest. Furthermore, information actually pointing to the true suspects involved in the murder was in the possession of Detective Brajdic for months prior to De'Andre Charles' arrest, but was ignored or overlooked by Detective Brajdic, who either intentionally, or recklessly, failed to discover and/or disclose this crucial exculpatory information that he possessed prior to participating in the indictment and arrest of Mr. Charles. Furthermore, as early as the Arthur Hearing in Mr. Charles' case, Mr. Charles, through his counsel, began to assert his innocence and identify the suspects who were responsible for the brutal murder of Joseph Raksin. Mr. Charles' assertions were ignored until the eve of a jury trial scheduled for November 2016, when Mr. Charles, through counsel, filed of detailed Motions in Limine seeking to

3

introduce evidence of the suspects who were truly responsible for the murder of Joseph Raksin. Only then did the State of Florida agree to grant Mr. Charles a bond. Thereafter, on January 18, 2017 the State of Florida dropped all charges against Mr. Charles.

The murder of Rabbi Joseph Raksin was committed on August 9, 2014. De'Andre Charles was arrested on December 9, 2015. The exculpatory evidence pointing to the true suspects involved in the murder of Rabbi Joseph Raksin, in the possession of Detective Brajdic for months and/or years prior to De'Andre Charles' arrest, includes, but is not limited to, the following:

- On August 10, 2014 Sgt. McCoy of the Miami-Dade Police Department notified Detective Brajdic that a confidential informant (C.I.) named 3 people involved in the homicide of Rabbi Joseph Raksin. Those 3 names were Kevin Civil, Dennis Parker and Max Killick The C.I. also identified a Black Cadillac Escalade as being involved in the murder. De'Andre Charles was not mentioned.

- Crime Stopper Tips received on August 11, 2014 provided the names of 2 suspects who were believed to have committed the murder of the Rabbi, Kevin Civil and Dennis Parker. De'Andre Charles was not mentioned.

- On April 14, 2015 a man, Junior Souffrant, in a confession to police, placed himself on the scene of the murder, in a vehicle with Kevin Civil, Dennis Parker, and Max Killick. Junior Souffrant explained that they were burglars and tried to break into homes. He further explained that on the day of the Rabbi's murder, they were together and had been unsuccessful in their burglary attempts prior to the vehicle they were in approaching the area where the Rabbi was murdered. This statement was a confession and provided motive as well. De'Andre Charles was not mentioned.

- Eyewitness descriptions of the clothing worn by the two suspects provided by neighbors on August 9, 2014 matched the description of the clothing worn by Kevin Civil and Dennis Parker provided by Junior Souffrant on April 14, 2015.

- On Friday August 15, 2014, a Black Cadillac Escalade was stopped and the three occupants of the vehicle were detained. Two of the occupants were Dennis Parker and Kevin Civil.

  - In his statement to police, Dennis Parker advised that Kevin Civil was recently released from jail for a probation violation and is a known burglar and robber. Dennis Parker stated he believes that Kevin Civil still commits burglaries and robberies. Dennis Parker stated that on the morning of August, 2014 he was located at his residence throughout the morning and

4

afternoon time and did not leave his residence. Thus, he denied being with Kevin Civil on August 9, 2014.

- In his statement to police, Kevin Civil informed the police that he was released from custody for a probation violation on August 6, 2014, and was essentially homeless. Kevin Civil further stated that on the evening of August 8, 2014 he slept in a car in front of Max Killick's house, and that on August 9 at approximately 8:00 am he awoke and drove with Max Killick to Dennis Parker's residence, where they smoked marijuana and then drove to the Sun King Apartments at approximately 10 am, where they saw Junior Souffrant and his friends standing near a black Cadillac Escalade. Kevin Civil admitted to knowing Junior Souffrant from the neighborhood. Kevin Civil stated that Junior Souffrant was heavily involved in robberies and burglaries, but he denied any involvement in the robberies with Junior Souffrant. Kevin Civil places himself with Dennis Parker, Max Killick, and Junior Souffrant, on the date of the Rabbi's murder.

- No one mentions being present with De'Andre Charles on August 9, 2014.

- On October 1, 2015, a firearms analyst from the Miami-Dade Crime Lab discovered a connection between a casing recovered from the scene of the Rabbi's murder and a casing recovered from an armed robbery that took place on August 8, 2014, the day before the Rabbi's murder, in Northwest Miami-Dade County, miles from the scene of the Rabbi's murder. The suspect in the robbery on August 8, 2014 was not De'Andre Charles. De'Andre Charles had no connection to the August 8, 2014 robbery and Detective Brajdic never offered an explanation regarding how De'Andre Charles could have possible gotten the same firearm one day later on August 9, 2014.

Liability attaches and a claim can be made for false arrest. Thereafter, Detective Brajdic continued to possess the exculpatory information while De'Andre Charles sat in jail protesting his innocence and awaiting his trial. Therefore, liability attaches and a claim can be made for false imprisonment and malicious prosecution.

De'Andre Charles spent approximately 338 days unlawfully incarcerated until he was finally released on November 11, 2016. The emotional and physical damages of being unlawfully incarcerated justify compensation. *See* Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112 (11th Cir. 2006)(A plaintiff is entitled to damages for all injuries that were the proximate result of the unlawful imprisonment/arrest including those for bodily injury, physical

suffering, physical inconvenience and discomfort, loss of time, losses in the plaintiff's business or employment, and expenses incurred due to the imprisonment).

Mr. Charles also suffered, and continues to suffer embarrassment and mental anguish from his wrongful arrest, especially considering the press conference conducted by the Office of the State Attorney, the Miami-Dade Police Department, and numerous Miami-Dade governmental officials, wherein De'Andre Charles was wrongly identified as the Rabbi's killer in a press conference that was disseminated locally and nationwide due to the heightened local and national media attention given to the Rabbi's murder and the lengthy, unresolved, murder investigation.[1] *See Reicheneder v. Skaggs Drug Center*, 421 F.2d 307 (5th Cir. 1970)(The fact that no physical hurt was inflicted on one complaining of false arrest is no ground for denying recovery of reasonable compensation for mental suffering, of which humiliation, shame, and fright are elements to be considered.)[2].

Pursuant to Florida Statute, Section 768.28(5), please provide our office with information regarding insurance coverage that your agency has obtained in order to insure against claims of this nature, including but not limited to the name of the insurance provider, the policy number, and applicable coverage limits.

As mentioned above, the U.S. Constitution avails everyone the right to be free from false arrest. As such, our pre-suit demand is $3,380,000.00, which reflects the value society ascribes to the sanctity of these freedoms. Please contact my office so that we can further discuss this matter, a potential pre-suit resolution, and provide this serious violation of rights the pre-suit attention it merits.

Yours truly,

James A. DeMiles, Esq.
Florida Bar # 15974
3440 Hollywood Blvd, Suite 415
Hollywood, Florida 33021
Office. (954)241-4246
Email. James@demileslaw.com

Adam K. Goodman, Esq.
Florida Bar # 41096
4160 West 16th Ave, Suite 404
Hialeah, Florida 33012
Office. (305)482-3265
Email. adam@adamgoodmanlaw.com

cc: Client
      File

---

[1] Mr. Charles was even the subject of a joke disseminated by nationally renowned comedian Kevin Hart as a result of his wrongful arrest.
[2] The Eleventh Circuit has adopted as binding precedent Fifth Circuit decisions prior to October 1, 1981. *Bonner v. Prichard*, 661 F. 2d 1206 (1981)

6